ROSENMAN COLIN FREUND LEWIS & COHEN, Respondent, v ALEXANDER EDELMAN, Individually and as General Partner of 130 WEST 79TH ASSOCIATES, et al., Appellants.

First Department, April 11, 1991

APPEARANCES OF COUNSEL

*Charles Sutton* for appellants.

*Leslie Reider* of counsel *(Rosenman Colin Freund Lewis & Cohen)*, respondent *pro se.*

**OPINION OF THE COURT**

Per Curiam.

Plaintiff Rosenman Colin Freund Lewis & Cohen is a law firm that obtained a judgment for unpaid fees against a former client and two partnerships with which he was affiliated, which judgment was affirmed on appeal *(Rosenman Colin Freund Lewis & Cohen v Edelman,* 160 AD2d 626, *lv denied* 77 NY2d 802, following denial with $100 costs, of a similar motion in this court for reargument or leave to appeal). Enforcing the judgment, Rosenman obtained a contempt order against defendants for their failure to comply with subpoenas calling for their appearances at an enforcement deposition. The order fined each of the three defendants $250, further directed them to pay plaintiff $1,500 as costs and expenses, and imposed a financial sanction on defendants' attorney, Charles Sutton, pursuant to 22 NYCRR 130-1.1 (c) (ii) (conduct "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another"), in the amount of $1,000. This contempt order and sanction was affirmed on appeal in a decision and order entered on September 13, 1990 (165 AD2d 706) and corrected on October 22, 1990; notice of entry of this affirmance was served on Sutton on October 25, 1990; the instant motion for reargument or leave to appeal was made on November 23, 1991.

Sutton's affirmation in support of the motion asserts without pretense of argument that our affirmance had the effect of depriving his clients of their constitutional right to counsel, and was based on various incorrect findings of fact and conclusions of law; it then concludes with the curious statement that "a further more detailed affirmation will be furnished in support of this motion." Exactly when he would be providing such a further affirmation Sutton did not say, but presumably this was to occur sometime before December 27, 1990, the date he noticed the motion to be heard five weeks after he served it on November 23.

Immediately upon receiving the motion in the mail, Sutton's

adversary at Rosenman returned it to him with a letter dated November 27, 1990, advising that she was rejecting the motion as defective pursuant to CPLR 2101 (f) on the ground that "you cannot simply file defective papers in order to come within the thirty-day time period, and then serve supplemental and 'more detailed affirmations' at your leisure." However, one week before the return date, apparently having second thoughts about treating the motion in this way, she prepared papers in opposition briefly reviewing the issues raised on the appeal and purporting to explain why our affirmance was correct. Baffled by Sutton's constitutional right to counsel argument, she pointed out that no such argument had been raised on the appeal and characterized it as being in any event incomprehensible.

On December 20, 1990, at 7:45 in the evening, after the Rosenman attorney had completed her preparation of the opposition papers and left them with her secretary with instructions to have them served the following morning, Sutton served by hand a 28-page "Supplementary Supporting Affirmation". The next day, December 21, several hours after he had been served by hand with Rosenman's opposition, Sutton advised his adversary at Rosenman by telecopier letter that he had requested and obtained (presumably from a clerk, since the record shows no judicial input at this juncture) an adjournment of the motion from December 27 to January 7. Also on December 21, Sutton served a 28-page "Corrected Supplementary Supporting Affirmation", which did not indicate what it was he was correcting in the affirmation of the same length he had served the previous evening.

On December 28, Sutton and Rosenman stipulated to adjourn the motion from January 7 to January 25. On January 17, Rosenman served by hand a cross motion for sanctions returnable on January 25. Not until January 28 did Sutton mail to Rosenman and file with the motion clerk his response to this cross motion. The Rosenman attorney, informed on January 28 by the motion clerk of this filing, wrote a letter to the clerk on January 29 asking that Sutton's response to the cross motion be rejected as untimely, failing which she requested an opportunity to submit further papers in support of the cross motion. By letter dated and mailed January 30, Sutton "confirm[ed]" for the clerk that he had informed the Rosenman attorney that on January 25 he had requested from the clerk permission to serve his reply on January 28 because of a death in his family; he also consented in that letter to

accept a further response from Rosenman, which Rosenman served by mail on January 31.

Rosenman's cross motion for sanctions, while taking strong exception to Sutton's practice of "supplementing his papers at his leisure", proceeds largely on the assumption that defendants' motion was timely served, but argues that a sanction is nonetheless warranted as the papers in support merely repeat some of the many points that were made on the appeal or raise a constitutional right-to-counsel point, itself "absurd", that was not made on the appeal. While we agree with this characterization of the motion, and therefore award Rosenman $100 costs (CPLR 8202), we stop short of calling it frivolous, mainly because we are not insensitive to Sutton's apparent concern, clumsily expressed as it is, that we might not have fully appreciated that he was, after all, actually engaged in a criminal trial on the scheduled date of the enforcement deposition. Although not framed exactly this way on the appeal, Sutton's engagement raised an issue, hardly free of difficulty, as to whether defendants should have been held in contempt for his extreme discourtesies to opposing counsel in not timely informing her of the engagement, and in repeatedly seeking adjournments of the deposition while refusing to acknowledge his acceptance of defendants' retainer. This equivocation by Sutton concerning his engagement put Rosenman in the uncomfortable position of either refusing a professional courtesy, or of extending the courtesy but being left out on a limb should Sutton ultimately disavow the retainer. After agreeing to two adjournments, and being left high and dry on the date the deposition was last scheduled, it was eminently reasonable, indeed generous, of Rosenman to offer a third adjournment only if Sutton confirmed his engagement and accepted responsibility for defendants' prompt appearance at the deposition. It was Sutton's refusal to accept this responsibility that resulted in his clients being held in contempt.

However, the propriety of making the motion aside, we cannot overlook Sutton's flouting of well-understood norms of motion practice requiring the moving party to set forth whatever it is he has to say in papers accompanying the notice of motion (22 NYCRR 202.8 [c]). Here, Sutton's affirmation in support of the motion was plainly deficient; realizing as much, he set the return date five weeks ahead and promised to furnish additional supporting papers in the future. (Under CPLR 5516, a motion for leave to appeal must be noticed for a date not more than 15 days after it is served. Although

advised of this rule in Rosenman's initial opposition served on December 21, 1990, Sutton's "Corrected Supplementary Supporting Affirmation" served later that day makes no mention of it, nor is any mention of it made in the papers he served on January 28, 1991. Nevertheless, we assume in Sutton's favor that he was unaware of this rule when he made the motion, and that his violation thereof was not intentional.) His adversary, understandably vexed, at first rejected the papers, but, apparently concerned that such might be viewed by the court as presumptuous, felt constrained, as the return date drew near, to prepare formal opposition. As it happened, it was only after she had completed preparing that opposition that she received what was meant by Sutton to be his papers in support of the motion. After reviewing those papers, she then had to review Sutton's correction of those papers. Irksome, to say the least.

This is not the first time Sutton has engaged in this type of conduct. In seeking leave to reargue or appeal this court's order of April 24, 1990 affirming the grant of summary judgment against defendants, Sutton first served only a bare notice of motion—on June 4, 1990, and thus untimely by more than a week insofar as reargument was sought, and returnable five weeks later on July 10, 1990, and thus violative of CPLR 5516 insofar as leave to appeal was sought—stating that it was based on papers "to be furnished". On June 5, Sutton served an "Amended Notice of Motion" supported by a 68-page "Uncorrected Affirmation"; several weeks later, on June 22, he served a "Corrected and Amended Notice of Motion" supported by a 72-page "Corrected and Amended Affirmation". We denied that motion with $100 costs, but such was apparently not enough to deter Sutton from continuing this unheard of practice of supplementing motion papers without leave of the court.

Accordingly, defendants' motion for leave to reargue or appeal to the Court of Appeals is denied with $100 costs, to be personally paid by their attorney, Charles Sutton. Plaintiff's cross motion for sanctions is granted to the extent of imposing a sanction of $500 on Charles Sutton pursuant to 22 NYCRR 130-1.1 (c) (ii).

Ross, J. P., Kassal, Ellerin and Wallach, JJ., concur.

Motion for reargument or leave to appeal to Court of Appeals denied; cross motion for sanctions granted, as indicated.