*246 OPINION OF THE COURT
Joseph J. Maltese, J.
The defendant’s motion for summary judgment dismissing the plaintiffs complaint is granted.
Facts
In this action by Debra Jo Huertas to recover for personal injuries allegedly sustained as a result of a trip and fall over stacked boxes, the defendant United Parcel Service (UPS) asserts that the plaintiffs suit is preempted under federal law. At the time of the accident on October 3, 2008 the plaintiff was employed by TJ Maxx located at 1015 Forest Avenue, Staten Island, New York. The plaintiff testified at a deposition that on the date of the accident she signed for packages delivered by a delivery person employed by UPS, who was not the usual delivery person. According to the plaintiff, the regular UPS delivery person would place packages on the counter behind the registers located at the front of the store.
However, testimony of Deborah Punzone, an assistant store manager, states that only “small packages” were left on the counter behind the registers. Another assistant store manager, Jonathan Bacon, testified that there was no set procedure concerning where the defendant would leave packages. According to Mr. Bacon, whoever signed for the packages was responsible for moving the boxes. He testified: “If she [the plaintiff] signed for the packages, then she should have made sure that the packages were not in her direct field — I mean that the packages wasn’t in her walkway or anybody else’s walkway. So she should have moved the packages.”
When questioned about the accident during her deposition the plaintiff testified as follows:
“Q. What happened next? Did you sign?
“A. I said to the UPS guy, please put the boxes on the counter. We don’t want to have customers fall over them. He said, yeah, yeah, yeah, I will do it, just sign. I said, No, you are going to put them up, right, and he said, Yeah, I’m going to do it. At that point I was going to sign and a customer called my name, Debra Jo, I need assistance. Could you help me. I walked the same way as when I came. I went that same way back because she was in the middle of, like, the third register.”
The plaintiff described her fall as follows:
*247 “I had to go on the register so now I was walking down from the end where I was working, the customer in the middle. I think I left her there because that’s where the line was for her to go on and I came around and I tripped over the boxes. I came around in front of the register. I was going to go through the door by the glass door and that’s when I tripped over the boxes.”
The plaintiff described the stack of boxes as being approximately three feet in height by five or six feet in length.
The defendant moves for summary judgment arguing: first, that the plaintiffs claims are preempted by the Federal Airline Deregulation Act of 1978 (ADA)[1] and the Federal Aviation Administration Authorization Act (FAAAA);[2] second, that the defendant owed the plaintiff no duty; and third, that the defendant did not create a dangerous condition.
Discussion
A motion for summary judgment must be denied if there are “facts sufficient to require a trial of any issue of fact” (CPLR 3212 [b]). Granting summary judgment is only appropriate where a thorough examination of the merits clearly demonstrates the absence of any triable issues of fact. “Moreover, the parties’ competing contentions must be viewed in a light most favorable to the party opposing the motion.”[3] Summary judgment should not be granted where there is any doubt as to the existence of a triable issue or where the existence of an issue is arguable.[4]
[5]As is relevant, summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law.[6] On a motion for summary judgment, the function of the court is issue finding, and not issue determination.[6] In making such an in *248 quiry, the proof must be scrutinized carefully in the light most favorable to the party opposing the motion.[7]
Federal Preemption
The defendant, United Parcel Service, Inc., argues that federal statutes, namely the Airline Deregulation Act and the Federal Aviation Administration Authorization Act, preempt the plaintiffs state common-law negligence claims. The ADA states in pertinent part that
“[e]xcept as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).”[8]
The FAAAA provides in pertinent part that
“[e]xcept as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.”[9]
In Rowe v New Hampshire Motor Transp. Assn., the Supreme Court of the United States recognized that Congress borrowed language from the ADA when crafting the FAAAA to preempt state trucking regulations of price, route or service.[10] Consequently, the defendant argues that the placement of packages by a UPS driver constitutes a “service” under the FAAAA pursuant to a tripartite test created by then U.S. District Court Judge Sonia Sotomayor in Rombom v United Air Lines, Inc. which stated that: (1) a court must first determine whether the *249 activity at issue in the claim is an airline service; (2) if the activity in question implicates a service, the court must then determine whether the claim affects the airline service directly or tenuously, remotely, or peripherally, and if the specific state tort claim has only an incidental effect on a service, there is no preemption; and (3) if the activity in question directly implicates a service, the court must determine whether the underlying tortious conduct was reasonably necessary to the provision of the service. Where the activity represents outrageous conduct that goes beyond the scope of normal aircraft operations, the claims should not be preempted.[11]
The defendant states that the New York Appellate Division of the Supreme Court, Second Department adopted the Rombom tripartite analysis in Biscone v JetBlue Airways Corp.[12] In Biscone, the plaintiff was a passenger on a JetBlue aircraft that was scheduled to depart New York’s JFK airport en route to Burbank, California, at 6:45 a.m. But the aircraft stayed on the ground for 11 hours until the plaintiff and other passengers were allowed to exit the aircraft at 5:30 p.m. During that time the plane’s ventilation system shut down, the toilet tanks filled and only small amounts of water were provided to the passengers. The plaintiffs complaint contained state common-law causes of action for false imprisonment, negligence, negligence per se, intentional infliction of emotional distress, fraud and deceit, and breach of contract.
The Appellate Division in Biscone engaged in a lengthy analysis of the current state of federal law with respect to the meaning of the term “service” in the ADA and FAAAA. In delivering the Court’s opinion Justice Leonard Austin reasoned as follows:
“Despite the lack of consensus among federal courts as to the specific meaning of ‘service,’ there is a general understanding that the ADA’s preemption provision does not preempt all state-law tort claims. The United States Supreme Court suggested as much in a footnote in [American Airlines, Inc. v Wolens (513 US 219 [1995])]. The Court cited the former FAA provision, currently codified at 49 USC § 41112 (a), that requires airlines to obtain insurance policies ‘for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of *250 the aircraft,’ and noted that the airline did not claim that ‘the ADA preempts personal injury claims relating to airline operations.’ ”[13]
After applying the Rombom test the Appellate Division, Second Department in Biscone found that “the provision of food, water, clean air, and toilet facilities, as well as the ability to deplane after a prolonged period on the tarmac, all relate to and implicate an airline service.”[14] Consequently, the Court found that the ADA preempted the plaintiffs claims for false imprisonment, intentional infliction of emotional distress, and fraud and deceit. But the Court found that “the ADA preemption provision did not apply to negligence claims alleging personal injury.”[15] In so doing the Court cited the holding of the United States Court of Appeals for the Fifth Circuit in Hodges v Delta Airlines, Inc.[16]
The plaintiff in Hodges sued to recover for personal injuries sustained when a case of rum dislodged from the overhead compartment and fell cutting the plaintiffs arm and wrist. The plaintiff alleged that the airline was negligent in allowing a case of rum to be stowed in an overhead storage bin. The Court of Appeals for the Fifth Circuit found that “neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.”[17] The court went on to state that Congress’s silence relating to personal injuries claims “takes on added significance in light of Congress’s failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse.”[18]
Here, the defendant, UPS, a delivery service company, delivered packages by truck to the plaintiffs employer’s store. UPS has its own fleet of airplanes and also uses other airlines to ship its packages in interstate commerce.
However, the facts of this case deal with the manner in which a delivery person stacked packages; it is not related to a “service” governed by the ADA or the FAAAA. As the Supreme *251 Court stated in Morales v Trans World Airlines, Inc.,[19] the Federal Aviation Act of 1958 (FAA), which was amended into the ADA in 1978, did not expressly preempt state regulation and contained a “saving clause” providing that “[n]othing . . . in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies” (quoting 49 USC former Appendix § 1506). Moreover, “state actions [affecting airline prices, routes and services] in too tenuous, remote, or peripheral a manner” may not be preempted, such as state laws regulating gambling and prostitution as applied to airlines.[20]
On May 13, 2013 the U.S. Supreme Court decided another case where a defendant has overreached in asserting the preemption clauses of the FAAAA and the ADA. In Dan's City Used Cars, Inc. v Pelkey (569 US —, 133 S Ct 1769 [2013]), the Supreme Court held that neither the FAAAA nor the ADA was applicable in a case where a vehicle owner brought an action against a towing company that towed his vehicle and later traded it to a third party without compensating the owner. In that case a New Hampshire Superior Court granted summary judgment to the towing company claiming that the FAAAA preempted the owner’s claims under common-law negligence and under the New Hampshire Consumer Protection Act. The New Hampshire Supreme Court reversed the trial court’s decision stating that the FAAAA’s preemption clause is inapplicable to disposing of automobiles after storage fees are not paid and that the “transportation of property,” or a towing company’s “service,” was not “related to” a carrier’s “rates, routes or services.” The U.S. Supreme Court granted certiorari and affirmed the New Hampshire Supreme Court’s decision that FAAAA’s preemption jurisdiction should not be expanded into areas that do not “impede! ] the free flow of trade, traffic, and transportation of interstate commerce.”[21]
The attempt by UPS to “bootstrap” the preemption provisions of the ADA and the FAAAA is misplaced. The plaintiffs claims here relate to the manner and location where the UPS delivery person stacked boxes in a store. These facts are too remote from any state “regulation” or the “service” provided by an “airline,” notwithstanding the fact that the packages may have come off of an airplane in interstate commerce and then *252 traveled in a motortruck to a store. It was not the intent of Congress to preclude such common-law negligence claims when it enacted the ADA or FAAAA.
Similar to the Hodges case,[22] the plaintiff claims she was injured as a result of negligent placement of packages. Therefore, the defendant has failed to demonstrate a prima facie entitlement to have plaintiffs complaint dismissed pursuant to the preemption clauses of the ADA and FAAAA.
Defendant Owed the Plaintiff No Duty
The New York Court of Appeals held in Espinal v Melville Snow Contrs. that a breach of a contractual obligation would only give rise to a duty to a third party in three situations: (1) when the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) when the plaintiff detrimentally relies on the continued performance of the contracting party’s duties; or (3) when the contracting party has entirely displaced the other party’s duty to maintain the premises safely.[23]
Despite the statement purportedly made by the UPS delivery person, that he would move the packages, UPS had no contractual obligation requiring that it was obligated to place deliveries on the counter behind the registers at TJ Maxx, the plaintiffs place of employment. In fact, the testimony of Jonathan Bacon, an assistant manager for that store, states that TJ Maxx employees, like the plaintiff, were obligated to ensure that delivered boxes did not create a hazard. Therefore, the plaintiff has failed to raise an issue of fact that would demonstrate a contractual obligation or duty on the part of UPS that would support a different conclusion.
Furthermore, even assuming that this court found that the plaintiff relied upon the voluntary acts of a delivery person to move packages, that did not rise to the level of a duty owed the plaintiff. The plaintiff testified that the pile of packages was three feet by approximately five or six feet. While it is not the controlling issue here, the fact that the pile of packages was that large may have also constituted an open and obvious obstruction that should have been avoided by reasonable use of *253 the plaintiffs senses and attention.[24] Consequently, the defendant’s motion to dismiss the complaint is granted.
Accordingly, it is hereby ordered that the defendant’s motion for summary judgment is granted and the plaintiffs complaint is dismissed; and it is further ordered that the defendant shall settle judgment.

. 49 USC § 41713.

. 49 USC § 14501.

. Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610, 610 (2d Dept 1990) (internal quotation marks omitted).

. American Home Assur. Co. v Amerford Intl. Corp., 200 AD2d 472 (1st Dept 1994).

. Rotuba Extruders v Ceppos, 46 NY2d 223 (1978); Herrin v Airborne Frgt. Corp., 301 AD2d 500 (2d Dept 2003).

. Wiener v Ga-Ro Die Cutting, 104 AD2d 331 (1st Dept 1984), affd 65 NY2d 732 (1985).

. Glennon v Mayo, 148 AD2d 580 (2d Dept 1989).

. 49 USC § 41713 (b) (4) (A).

. 49 USC § 14501 (c) (1).

. 552 US 364 (2008).

. 867 F Supp 214 (SD NY 1994).

. 103 AD3d 158 (2d Dept 2012).

. Id. at 172 (citation omitted).

. Id. at 175.

. Id. at 176-177.

. 44 F3d 334 (5th Cir 1995).

. Id. at 338 (citation omitted).

. Id. (citations omitted).

. 504 US 374, 378 (1992).

. Id. at 390.

. 569 US at —, 133 S Ct at 1780.

. 44 F3d at 334.

. 98 NY2d 136 (2002).

. See Azumally v 16 W. 19th LLC, 79 AD3d 922 (2d Dept 2010); see also Neiderbach v 7-Eleven, Inc., 56 AD3d 632 (2d Dept 2008).